**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **MITCHELL ENTERPRISES, LTD.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:12-CV-110** |
| | § | |
| **BENNIE CONSULTING ENGINEERS,** | § | |
| **LLC** | § | |
| **Defendant.** | § | |

### O R D E R

The above-referenced cause of action was referred to the undersigned United States

Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  The following motion

is before the Court: Bennie Consulting Engineers, LLC's Motion to Disqualify Counsel for Plaintiff

(Docket Entry # 17). The Court, having reviewed the relevant briefing, is of the opinion the motion

should be **DENIED**.

### I.  BACKGROUND

On June 7, 2012 Mitchell Enterprises, Ltd. ("Plaintiff" or "Mitchell") initiated this lawsuit

in the 397th Judicial District of Grayson County, Texas, claiming it is owed monies by Bennie

Consulting Engineers, LLC ("Defendant" or "BCE") in connection with a project at the federal Red

River Army Depot ("RRAD") in Texarkana, Texas.  On July 13, 2012, Defendant removed the

lawsuit to the United States District Court for the Eastern District of Texas, Sherman Division.

Following a motion to transfer venue by Defendant, the lawsuit was transferred to this Court on

October 22, 2012, by agreement of the parties.  The Court uses the following summary of facts as

presented in Defendant's motion to disqualify Paul H. Sanderford and the firm of Sanderford &

1

Carroll, P.C. as Plaintiff's counsel.

Defendant specializes in designing dust collection and air pollution systems. Defendant submitted a bid to the RRAD to replace what is known as the "baghouse system" (the "Baghouse Project"). The baghouse system is a dust collection system consisting of three 100-ton units and associated parts and equipment. During the bid process, Plaintiff approached Defendant to inquire about the possibility of securing a subcontract to perform the installation wok on the Baghouse Project.[1]

The federal government's solicitation for the Baghouse Project classified the project as a "Total Small Business Set-Aside" and set forth parameters that included restrictions on the size (both in terms of revenue and number of employees) of the businesses that were eligible to be awarded the job. Plaintiff desired to work on the project but was too large to meet the size parameters. Plaintiff sought to team with Defendant in hopes of securing a role in the project as a subcontractor.

The project was initially awarded to another bidder, DUSTEX. Paul H. Sanderford drafted a letter for Warren Bennie's signature for submission to the government to protest DUSTEX's bid because DUSTEX exceeded the small business size parameters set forth in the government's solicitation for the project. On or about April 15, 2011, the RRAD awarded Defendant the contract for the Baghouse Project. Defendant, as contractor, and Plaintiff, as subcontractor, entered into a

---

[1] The parties disagree as to who first initiated contact regarding the bid. Defendant asserts Plaintiff first approached Defendant. Plaintiff contends Defendant initiated contact with Plaintiff for an earlier bid when the government advertised a pollution control project at RRAD. Regarding the second government solicitation for a pollution control project at RRAD, Plaintiff does states Mr. Mitchell (a partner in Mitchell Enterprises) contacted Mr. Bennie (sole shareholder for Defendant) to discuss working together "since BCE met the solicitation's small business requirement [and] Mitchell possessed the capacity to guarantee the bonds and sufficient time existed for the parties to act prior to the bid deadline." Response at pgs. 2-3. For purposes of this Order, the Court need not decide who first initiated contact.

Standard Form Subcontract (the "Subcontract") on or about June 2 or 3, 2011, but effective as of April 12, 2012. Under the Subcontract, Defendant was responsible for designing, engineering, and fabricating the equipment for the project, and Plaintiff was responsible for demolishing and/or removing the old equipment and installing the new equipment provided by Defendant, with a few limited exceptions outlined in the Subcontract.

## II. THE PARTIES' POSITIONS

Defendant moves to disqualify Plaintiff's counsel, Paul H. Sanderford and his law firm, asserting that during some or all of the bid procurement process, Mr. Sanderford represented Defendant in connection with the "size protest" against DUSTEX. Specifically, Defendant relies on the following:

- Mr. Mitchell introduced Defendant to Mr. Sanderford and urged that Mr. Sanderford could help Defendant initiate the size protest against DUSTEX;

- Mr. Sanderford drafted a letter for Mr. Bennie's signature for submission to the government to protest the bid of DUSTEX;

- On July 27, 2012, Defendant's current counsel sent a letter to Mr. Sanderford stating, in part, "[w]e understand you previously represented BCE in connection with a size protest . . . as part of the bid process for the 'Baghouse Project' made the subject of this suit," and requesting that Mr. Sanderford provide Defendant with a copy of his file associated with that matter. According to Defendant, Mr. Sanderford did not object to Defendant's characterization of the prior attorney-client privilege, and Mr. Sanderford's partner, Mr. Cowan, responded to the letter and enclosed a compact disk containing what he represented to be the "file maintained by our firm related to the size bid request."

- Mr. Sanderford's former representation of Defendant and current representation of Plaintiff both specifically relate to the Baghouse Project; and

- Relying on the existence of the attorney-client privilege, Defendant shared highly confidential information, including sensitive financial and business information, with Mr. Sanderford during the Baghouse Project bid process.

Bennie Aff. at ¶¶4, 7-9.

In its response, Plaintiff asserts no attorney-client relationship ever existed between Mr. Sanderford and Defendant.  According to Plaintiff, the fact that Mr. Sanderford and his associate, Mr. Cowan, produced the firm's size protest file without objecting to Defendant's counsel's characterization of the relationship does not establish or confirm the existence of an attorney-client relationship.  Plaintiff also asserts the DUSTEX bid protest and this lawsuit are not substantially related under the disqualification test's second prong.

### III. APPLICABLE LAW

The rule of disqualification is not mechanically applied in the Fifth Circuit.  *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981), *citing Brennan's, Inc. v. Brennan's Restaurants*, 590 F.2d 168, 173-74 (5th Cir. 1979).  In this circuit, courts apply the "substantial relationship" test in deciding whether to disqualify counsel.  *In re American Airlines, Inc.*, 972 F.2d 605, 619-621 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). Under the substantial relationship test, a party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify, and (2) a substantial relationship between the subject matter of the former and present representations.  *Id.* at 614.

The substantial relationship test is governed by an irrebuttable presumption.  "Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'" *Id.* at 614, *quoting Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir.), *cert. denied*, 454 U.S. 895 (1981).  A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm.  *In*

*re American Airlines*, 972 F.2d at 614, n. 1; *See In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981).

## IV.  DISCUSSION

### A.    Disqualification pursuant to the Fifth Circuit's disqualification test.

The threshold question for the Court is whether an attorney-client relationship existed between Defendant and Paul Sanderford. *In re American Airlines*, 972 F.2d at 614.  Under Texas law, there is no attorney-client relationship absent a showing of privity of contract. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). The attorney-client relationship is viewed "as a contractual relationship in which the attorney agrees to render professional services on behalf of the client." *Id*. The attorney-client relationship can be formed by explicit agreement of the parties or it may arise by implication from the parties' actions. *Id.* "Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent." *Id.*

Courts evaluate objective facts to determine whether parties have manifested their mutual intent to create an attorney-client relationship.  Examples of facts used by other courts include:

- meeting with an attorney and signing documents in the attorney's office did not create relationship; *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied)(the court held that husband's attorneys did not have attorney-client relationship with wife even though wife met with attorneys and signed documents in their offices);

- issuing an opinion letter in connection with a securities offering did not create  relationship; *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d at 1198;

- rendering a legal opinion addressed to movant did not create relationship; *Bancrof v. Kneipper*, 1992 WL 373164, *2 (N.D. Tex. 1992);

- generating billing statements addressed to the movant which referencing work performed showed an intent to enter into an attorney-client relationship; *El Paso v. Salas-Porras Soule*,

6 F.Supp. 2d 616, 623 (W.D. Tex. 1998); and

- engaging in strategy meetings, communications regarding legal bills and costs, transmitting invoices, sending draft engagement letters, engaging in substantive legal discussion, directing and guiding attorneys in their legal work, attorneys responding to and being guided by direction from movant created an attorney-client relationsip. *Hill v. Hunt*, 2008 WL 4108120, *4 -14 (N.D. Tex. 2008).

Turning to the facts of this case, Mr. Sanderford has served as counsel for Steve Mitchell and his business entities for approximately 19 years. Sanderford Aff. at ¶2. Mr. Sanderford was not involved in and did not assist Mr. Mitchell or Plaintiff with respect to formation of its relationship with Defendant, and he did not review, draft, modify, or advise Mitchell with respect to its subcontract agreement with Defendant. *Id.*

In his affidavit in support of his motion, Mr. Bennie claims that he relied upon the attorney-client privilege and shared "highly confidential information with Mr. Sanderford during the Baghouse Project bid process," including "sensitive information related to BCE's financials and business" during several telephone conversations." In his first supplemental affidavit, Mr. Bennie states he shared highly confidential information with Mr. Sanderford during two telephone conversations which took place on or about January 13 and 17, 2011. Bennie Supp. Aff. at ¶ 4. According to Mr. Bennie, Mr. Sanderford also advised BCE regarding disqualification of a company named DAVITZ. *Id.* at ¶ 5.

Although a movant's subjective belief can be considered by the court, "this belief is not sufficient to establish a relationship." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1384 (10th Cir. 1994). Subjective beliefs concerning the existence of an attorney-client relationship must also be reasonable. *Id.* Here, Mr. Bennie's subjective belief concerning the existence of an attorney-client relationship, even coupled with the draft letter and two telephone conversations with Mr. Sanderford,

is insufficient to establish a relationship.

"Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent." *Kneipper*, 67 F.3d at 1198. As outlined in further detail below, Defendant has failed to show an intent to form an attorney-client relationship.

The evidence shows that in January 2011, Mr. Mitchell contacted Mr. Sanderford to discuss possibly assisting Mitchell with a bid protest related to a contract for a project in which Mitchell had an interest. Mr. Mitchell informed Mr. Sanderford that DUSTEX failed to meet the small business size requirement because it was too large. *Id*. at ¶ 3. Mr. Mitchell requested that Mr. Sanderford assist Mitchell with protesting DUSTEX's bid. Mitchell Aff. at ¶ 5. At Mr. Mitchell's direction, and with information provided by Mr. Mitchell, Mr. Sanderford worked a total of 7.3 hours over 4 days. Sanderford Aff. at ¶ 4 and Exh. B-1. Mr. Mitchell, not Mr. Bennie, participated in meetings with Paul Sanderford, guided his legal work, received legal invoices, paid legal bills and engaged in substantive legal discussions, and communicated with counsel. *Id*.

Much of the communication related to the size protest was transmitted via electronic mail. The e-mails began on January 13, 2011 and ended on January 19, 2011. The e-mails indicate that Mr. Sanderford and Mr. Bennie never manifested any intent to create an attorney-client relationship. Instead, they indicate the only attorney-client relationship that existed was between Mr. Sanderford and Mitchell Enterprises. Relevant emails state the following:

• January 13, 2011 – Mr. Bennie requested the following from Mr. Mitchell, "…Can you please ask *your attorney* if we can ask RRAD to remove BCE's literature from Davitz's bid…The attorney may have a comment about the rules by which RRAD must play by." (Mitchell Aff., Exh. A-1)(emphasis added);

7

- January 14, 2011 – Mr. Mitchell forwarded solicitation information to Mr. Sanderford and provided the name and physical address for Mitchell's "guy" BCE. Mr. Mitchell indicated he had a cell number for Warren Bennie, but it was not provided. (*Id.* at Exh. A-2);

- January 14, 2011 – Mr. Mitchell advised Mr. Sanderford that his main objective (not BCE's) was to disqualify the DUSTEX proposal on the size standard basis. (*Id*. at Exh. A-3);

- January 17, 2011 – Mr. Mitchell requested that Mr. Sanderford confirm his ability to submit the protest to the GAO on the "size standard." (*Id.* at Exh. A-4);

- January 17, 2011 – Mr. Sanderford replied to Mr. Mitchell advising that the protest would be handled; that a size protest is nothing more than a letter to the Contracting Officer with supporting documents; and that he was conducting some legal research and would provide a status report by noon. (*Id*. at Exh. A-5);

- January 17, 2011 – Mr. Mitchell e-mailed Mr. Sanderford and suggested the size protest be filed the next Wednesday. Mr. Mitchell asked Mr. Sanderford whether it was best for BCE to file the paper with the GAO or for Mr. Sanderford to send the letter on BCE's behalf. In this same email, Mr. Mitchell directed Mr. Sanderford to "draft the verbage and send it for their [BCE's] use" and he then authorized Mr. Sanderford to draft the protest letter regardless of the method used to ultimately transmit the letter to the Government. (*Id*. at Exh. A-6);

- January 17, 2011 – Mr. Bennie emailed Shane Mitchell and Steve Mitchell and asked, "Did your attorney say that the letter would help?" (*Id*. at Exh. A-7);

- January 19, 2011 – Mr. Mitchell emailed Mr. Sanderford and advised that he wanted to get the protest of any award by the Government to DUSTEX issued. (Id. at Exh. A-8);

- January 19, 2011 – Mr. Sanderford advised, "Steve-what I am going to do is prepare a letter from BCE to the Contracting Office initiating the size protest. I should have that ready by noon today." (*Id*. at Exh. A-9); and

- January 19, 2011 – Mr. Sanderford transmitted the size protest letter and exhibits to Mr. Bennie and Mr. Mitchell with directions on how to transmit the same to the government. (*Id.* at Exh. A-10).

These emails demonstrate that it was Steve Mitchell and Mitchell Enterprises that sought advice, provided information, and gave direction to Paul Sanderford. Mr. Sanderford replied to Mr. Mitchell's questions. He was guided by Mr. Mitchell's directions, and he directly exchanged his ideas about the size protest issue with Mr. Mitchell, not Mr. Bennie. With the exception of

8

discussions concerning where to transmit the size protest letter, Mr. Bennie never actively communicated with Mr. Sanderford nor did he direct his work, discuss strategy, or engage in any legal discussions.  The January 13 and January 17 emails from Mr. Bennie to Mr. Mitchell wherein Mr. Bennie referred to Mr. Sanderford as "your attorney" further indicate that Mr. Bennie considered Mr. Sanderford to be Mitchell Enterprises' attorney and not BCE's or his personal attorney.  And as indicated by Sanderford & Carroll, P.C.'s invoice to Mitchell Enterprises, all direction and information necessary for Mr. Sanderford to assist with the bid protest came from Mr. Mitchell and not Mr. Bennie or BCE.

Mr. Sanderford states he never considered BCE or Mr. Bennie to be his client or a client of his firm.  Sanderford Aff. at ¶ 4.  Mr. Sanderford has never met Mr. Bennie, and he does not recall participating in any telephone conversations with him.  *Id*. at ¶ 9.  However, as noted above, Mr. Bennie states he had two telephone conversations with Mr. Sanderford.  Regardless of whether Mr. Sanderford and Mr. Bennie spoke on the telephone, this is insufficient to support the formation of an attorney-client privilege.  Nor does the fact that Mr. Sanderford drafted the letter for the benefit of BCE mean that BCE was his client. As outlined above, the evidence indicates the protest letter was discussed with, requested by, and paid for by Mr. Mitchell and Mitchell Enterprises rather than BCE.

While it is not necessary for a written engagement agreement to exist in order to create an attorney-client relationship, it is Mr. Sanderford's practice to require signed written contracts and to receive cash retainers from new clients.  Sanderford Aff. at ¶ 8.  Mr. Sanderford and his law firm also typically bill their clients on an hourly basis and transmit detailed invoices on a monthly basis.  *Id.* at ¶ 5.  With respect to the DUSTEX size bid protest, all services billed by Sanderford & Carroll,

P.C.'s attorneys are shown on invoice no. SC3422. The invoice was addressed and delivered to Mitchell Enterprises, Ltd. *Id*. at Exh. B-1. The internal matter name assigned by Mr. Sanderford for the DUSTEX protest was "MITCHELL:Red River." *Id.* Invoices were never created or transmitted to BCE.

In sum, the DUSTEX size protest consisted of Mr. Sanderford sending the bid protest letter to Mr. Bennie and having subsequent conversations concerning forwarding the letter to the proper government employees. The protest concerned DUSTEX's size and did not require nor reflect any information concerning BCE. Mr. Sanderford did not request any financial or business information from BCE. Mr. Sanderford does not recall ever receiving any confidential, financial or business information concerning BCE. Sanderford Aff. at ¶ 9. Other than drafting the DUSTEX size protest letter requested by Mitchell, Mr. Sanderford was not involved in any aspect of BCE's bid process.

A review of the bid protest letter indicates that it contains no privileged information or advice. Once submitted, the letter became a public record. Because BCE bid the project as a potential prime contractor, it was necessary for the protest letter, which was requested by Mr. Mitchell, to be prepared for BCE's signature.

Finally, the Court agrees with Plaintiff that Mr. Sanderford's failure to object to Defendant's counsel's characterization of the relationship does not evidence the existence of an attorney-client relationship. Mr. Cowan produced the firm's size protest file without objecting to Defendant's counsel's characterization of the relationship. The letter voluntarily transmitting the requested information stated only, "Per your request, please find enclosed a compact disk containing the file maintained by our firm related to a size bid protest. Specifically, this bid protest related to solicitation no. W911RQ-11-B-0001-0001 issued by the Red River Army Depot."

"Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Fed. Deposit Ins. Corp. v. U. S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). The Court, having carefully considered the evidence, finds the facts do not support the formation of an attorney-client relationship between Mr. Sanderford and Mr. Bennie or BCE. Therefore, the Court will not deprive Plaintiff of the right to be represented by Mr. Sanderford.

Even if the Court were to assume that an attorney-client relationship existed between Mr. Sanderford and Defendant, the Court would still find Defendant fails to establish the second prong required under the disqualification test, whether a substantial relationship exists between the subject matter of the former and present representations. Under the second prong, a substantial relationship may be found only after "the moving party delineates with specificity the subject matters, issues, and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *In re American Airlines*, 972 F.2d at 614 (internal quotations omitted).

Defendant has not established any similarities between the subject matters, issues, and causes of action between the disqualification of DUSTEX (based upon its failure to qualify pursuant to the contract's size requirements) and those alleged between Mitchell and BCE in this lawsuit. The subject matter of the size protest was limited to alerting the government that DUSTEX exceeded the size limits. The case before the Court does not concern DUSTEX's size, and DUSTEX is not a party to this lawsuit. Rather, Plaintiff brings breach of contract claims against Defendant for its failure to repay debt owed to Plaintiff. Defendant has not carried its burden to prove the second prong of the substantial relationship test. For this additional reason, its motion to disqualify Mr. Sanderford

under the Fifth Circuit's disqualification test is denied.

**B.      Disqualification pursuant to Texas Disciplinary Rule of Professional Conduct 1.09**

Defendant's argument that Mr. Sanderford should be disqualified pursuant to Texas Disciplinary Rule of Professional Conduct 1.09 also fails. In Texas, an attorney must be disqualified from representing a client if he personally represented a former client, currently represents another client in a manner adverse to the former client, does not have the former client's consent to represent the other client, and the representation results in a conflict of interest under Rule 1.09 of the Texas Disciplinary Rules.

Paul Sanderford's actions, including drafting the DUSTEX bid protest letter for submission by BCE and possibly participating in two telephone conversations with Mr. Bennie, does not evidence the parties' mutual intent to create an attorney-client relationship, especially when viewed in context with the evidence as a whole.  Without the formation of an attorney-client relationship between Mr. Sanderford and Mr. Bennie, disqualification pursuant to Rule 1.09 is inappropriate.

**C.      Disqualification based upon Texas Disciplinary Rule of Conduct 3.08**.

In its motion, Defendant sets forth the rules prohibiting representation by an attorney who is likely to testify on behalf of a client about fact issues other than uncontested matters or attorney's fees. *See* Texas Disciplinary Rule of Conduct Rule 3.08.  According to Defendant, Mr. Sanderford's dual role at trial, "in the likely event that he is called upon to testify, will unfairly prejudice BCE by causing confusion to the jury." Mot. at pg. 14.   Defendant further asserts Plaintiff may attempt to use Mr. Sanderford's knowledge of Defendant's finances against Defendant.

Mr. Sanderford will not likely serve as a witness in this case.  Again, Plaintiff alleges breach of contract claims.  Mr. Sanderford has represented he has no knowledge concerning the preparation

of the parties' Subcontract or the formation of the relationship between Mitchell and BCE. Further considering Mr. Sanderford does not recall ever receiving financial or business information from BCE (information which might could be used against Defendant in this case), the Court will not disqualify Mr. Sanderford based on Rule 3.08.

Based on the foregoing, it is

**ORDERED** that Bennie Consulting Engineers, LLC's Motion to Disqualify Counsel for Plaintiff (Docket Entry # 17) is **DENIED**.

**SIGNED this 22nd day of January, 2013.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE